**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAMON P. VINCENT, | : | Civil No. 3:25-cv-2555 |
| | : | |
| Petitioner | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| WARDEN, USP-CANAAN, | : | |
| | : | |
| Respondent | : | |

**MEMORANDUM**

Presently before the Court is a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2241, filed by Petitioner Ramon Vincent ("Vincent"), an inmate in the custody of the

Federal Bureau of Prisons ("BOP"). (Doc. 1). Vincent contends that his due process rights

were violated in the context of two disciplinary hearings. (*Id.*). For the reasons set forth

below, the Court will deny the petition.

I.   **Background**

     A.   BOP Disciplinary Process

The BOP's disciplinary process is fully outlined in the Code of Federal Regulations

("C.F.R."), Title 28, Sections 541 through 541.8. These regulations dictate the manner in

which disciplinary action may be taken should a prisoner violate, or attempt to violate,

institutional rules. The first step requires filing an incident report and conducting an

investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation

promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.* Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. *Id.* § 541.3. In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than twenty-four (24) hours before the DHO hearing and offer the inmate a full-time staff member to represent him at the DHO hearing. *Id.* § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to present documents and submit names of requested witnesses and have them called to testify. *Id.* § 541.8(f). The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably available." *Id.* § 541.8(f)(2). The DHO need not call repetitive witnesses or adverse witnesses. *Id.* § 541.8(f)(3). The inmate has the right to be present throughout the DHO

2

hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion." *Id.* § 541.8(e).  The DHO must "consider all evidence presented during the hearing." *Id.* § 541.8(f).  "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.*  The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions. *Id.* § 541.8.  The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed. *Id.* § 541.8(f)(2).  A copy must be delivered to the inmate. *Id.*

B.    Incident Report Number 4159035

On August 3, 2025, at approximately 12:32 p.m., a staff performed a pat search of Vincent after escorting him from the Visitation Room following a visit.  (Doc. 12-6, Incident Report Number 4159035, § 11).  During the search, Vincent admitted he had contraband hidden inside his boxer shorts.  (*Id.*).  Vincent surrendered a grey colored balloon with an unknown substance inside.  (*Id.*).  Staff secured the balloon and placed Vincent in a holding cell.  (*Id.*).  A visual search of Vincent was then performed, and staff recovered a second grey colored balloon containing an unknown substance.  (*Id.*).  The two balloons were taken to the Special Investigate Services ("SIS") Office, where they were weighed and found to total approximately 19 grams.  (*Id.*).  Both balloons contained a brown leafy substance that

had a strong tobacco odor. (*Id.*). The substance was tested with the Smiths Detection

IONSCAN 600, which produced a negative result for narcotics. (*Id.*).

As a result, Vincent received Incident Report Number 4159035, charging him with

violating Prohibited Act Code 331—possession of a non-hazardous tool. (*Id.* § 9). The

report was not issued to Vincent until August 4, 2025, because the initial incident report was

rewritten for an edit to the charged misconduct. (*Id.* §§ 11, 14-16). On August 5, 2025,

Vincent appeared before the UDC. (*Id.* §§ 17-21). The UDC referred the Incident Report to

the DHO for further hearing. (*Id.*).

On August 5, 2025, a staff member informed Vincent of his rights at the DHO

hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (*Id.*

at 5, Inmate Rights at Discipline Hearing). Vincent was also provided with a Notice of

Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (*Id.* at 6, Notice of

Discipline Hearing before the DHO). Vincent signed both forms, he did not request

representation by a staff member and did not elect to call witnesses on his behalf. (*Id.*).

The DHO hearing convened on August 18, 2025. (Doc. 12-7, DHO Report). During

the August 18, 2025 hearing, the DHO confirmed that Vincent received advanced written

notice of the charges and that he had been advised of his rights before the DHO. (*Id.* § I).

Vincent waived his right to representation by a staff representative, waived his right to call

witnesses on his behalf, expressed an understanding of his rights before the DHO, and did

4

not present any documentary evidence. (*Id.* §§ II, III, V). Vincent admitted that he was guilty of the charge and did not provide a statement. (*Id.* § III).

Based on the greater weight of the evidence, the DHO found that Vincent committed the Code 331 violation, after considering and relying upon the reporting officer's written statement, the incident report, photographs, and Vincent's admission of guilt. (*Id.* §§ IV, V). The finding of guilt for the Code 331 violation resulted in disallowance of 14 days of good conduct time and loss of visiting privileges for 90 days. (*Id.* § VI). The DHO cited the following reasons for imposition of the sanctions:

> The action/behavior on the part of any inmate to Possession, Manufacture, or Introduction of a nonhazardous tool or other Non-Hazardous Contraband, threatens not only the health, safety and welfare of himself, but that of all other inmates and staff within the institution. The sanctions imposed by the DHO were taken to let you know that you alone will be held responsible for your action/behavior at all times.

> The sanction of 14 days disallowed good conduct time is imposed to meet the reporting requirement of your PLRA sentence procedure.

> The sanction of 90 days loss of visit is imposed to deter future misbehavior.

(*Id.* § VII).

At the conclusion of the hearing, the DHO provided a copy of the report to Vincent and advised him of his appeal rights. (*Id.* § VIII). Thereafter, on August 25, 2025, a staff member delivered the DHO report to Vincent. (*Id.* § IX).

C.    Incident Report Number 4158996

On August 3, 2025, at approximately 1:00 p.m., while in the holding cell, Vincent advised the lieutenant "I got more stuff to give you LT[]." (Doc. 12-4, Incident Report § 11). Vincent "reached toward his back side, then into his rectum and produced a 2¼ inch blue latex bundle, wrapped in clear plastic, which emitted a strong odor of marijuana." (*Id.*). The lieutenant took the contraband from Vincent and generated a Chain of Custody Form and gave it to the SIS Office. (*Id.*). At approximately 1:15 p.m., the balloon was weighed and determined to be approximately seven grams of a green leafy substance. (*Id.*). At 1:38 p.m., the substance was tested with the Smiths Detection IONSCAN 600, which produced a positive reading for Tetrahydrocannabinol ("THC") 28%. (*Id.*). The lieutenant also utilized a NIK Test Kit E, which revealed a positive result for THC. (*Id.*).

As a result, on August 3, 2025, Vincent received Incident Report Number 4158996, charging him with violating Prohibited Act Code 113—possession of drugs/alcohol. (*Id.* §§ 9-10). On August 4, 2025, Vincent appeared before the UDC. (*Id.* §§ 17-21). The UDC referred the matter to the DHO for further hearing. (*Id.*).

On August 4, 2025, a staff member informed Vincent of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (*Id.* at 5, Inmate Rights at Discipline Hearing). Vincent was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (*Id.* at 6, Notice of

6

Discipline Hearing before the DHO). Vincent signed both forms, waived his right to representation by a staff member and did not elect to call witnesses on his behalf. (*Id.*).

The DHO hearing convened on August 18, 2025. (Doc. 12-5, DHO Report). During the August 18, 2025 hearing, the DHO confirmed that Vincent received advanced written notice of the charges and that he had been advised of his rights before the DHO. (*Id.* § I). Vincent waived his right to a staff representative, waived his right to call witnesses, expressed an understanding of his rights before the DHO, and did not present any documentary evidence. (*Id.* § II, III, V). He provided the following statement: "the officer said I handed him a blue balloon, it was 5 of us there, I only handed him a grey balloon." (*Id.* § III).

The DHO found sufficient evidence that Vincent committed the Code 113 violation, after considering and relying upon the reporting officer's written statement, the incident report, test results, and photographs. (*Id.* § V). The finding of guilt for the Code 113 violation resulted in disallowance of 41 days of good conduct time, loss of commissary privileges for 90 days, loss of phone privileges for 90 days, and disciplinary segregation for 14 days. (*Id.* § VI). The DHO cited the following reasons for imposition of the sanctions:

> The action/behavior on the part of any inmate to possess intoxicants
> threatens not only the health, safety and welfare of himself, but that of all
> other inmates and staff within the institution. In the past, inmates under the
> influence of drugs or alcohol have become violent toward other inmates, as

7

well as staff, and this type of behavior cannot, and will not be tolerated. The sanctions imposed by the DHO were taken to let you know that you alone will be held responsible for your action/behavior at all times.

(*Id.* § VII).

At the conclusion of the hearing, the DHO provided a copy of the report to Vincent and advised him of his appeal rights. (*Id.* § VIII). Thereafter, on August 25, 2025, a staff member delivered the DHO report to Vincent. (*Id.* § IX).

## II.    Discussion

Vincent claims that his due process rights were violated in the context of the disciplinary hearing process. (Doc. 1). The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Federal inmates possess a liberty interest in good conduct time. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: (1) written notice of the claimed violation at least 24 hours in advance of the hearing; (2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; (3) assistance in presenting a defense if the inmate is illiterate; (4) an impartial tribunal; and (5) a written statement by the factfinder as to

8

evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564.

Here, Vincent was afforded all of the required procedural rights set forth in *Wolff*.

*Wolff* requires that an inmate be provided notice of the charges against him at least 24 hours in advance of the disciplinary hearing. *See Wolff*, 418 U.S. at 564. It is undisputed that Vincent received such notice. On August 4, 2024, Vincent received advanced notice of the charges against him when the investigating lieutenant delivered a copy of Incident Report Number 4159035 to him. (Doc. 12-6). On August 18, 2025, Vincent appeared before the DHO for Incident Report Number 4159035. (Doc. 12-7). On August 3, 2025, Vincent received advanced notice of the charges against him when the investigating lieutenant delivered a copy of Incident Report Number 4158996 to him. (Doc. 12-4). On August 18, 2025, Vincent appeared before the DHO for Incident Report Number 4158996. (Doc. 12-5). Thus, Vincent was given notice for both incident reports in advance of the required 24 hours prior to the hearings, and there is no merit to any argument that officials violated the procedures required by *Wolff*. Additionally, after Vincent received the incident reports, he appeared before the UDC. He was properly informed of his rights before the DHO hearings, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. At the conclusion of the DHO hearings, Vincent received written decisions setting forth the

9

evidence relied upon by the DHO and the rationale behind the decisions. Vincent was also notified of his right to appeal.

Since Vincent was afforded all of his procedural rights, the only remaining issue is whether there was "some evidence" to support the decisions by the DHO. The Supreme Court has held that there need only be "some evidence" to support the disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that the Court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause"). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455. The record clearly reveals the existence of some evidence to allow the DHO to conclude that Vincent was guilty of the charges. With respect to Incident Report Number 4159035, in concluding that the greater weight of the evidence supported a finding of guilt, the DHO considered the reporting officer's written statement, the incident report, photographs, and Vincent's admission of guilt. (Doc. 12-7 §§ IV, V). As to Incident Report Number 4158996, in concluding that the greater weight of the evidence supported a finding of guilt, the DHO considered the reporting officer's written statement, the incident report,

10

test results, and photographs. (Doc. 12-5 § V). In each instance, the DHO's reliance on such documentary evidence supports a conclusion that the decisions have some basis in fact and are supported by some evidence.

Next, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Vincent was found guilty of a 100-level, greatest severity prohibited act, and a 300-level, moderate severity level prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level prohibited acts:

A.    Recommend parole date rescission or retardation.
B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1.  Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C.    Disciplinary segregation (up to 12 months).
D.    Make monetary restitution.
E.    Monetary fine.
F.    Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G.    Change housing (quarters).
H.    Remove from program and/or group activity.
I.    Loss of job.
J.    Impound inmate's personal property.
K.    Confiscate contraband.
L.    Restrict to quarters.
M.    Extra duty.

28 C.F.R. § 541.3 (Table 1).

11

And, pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 300-

level prohibited acts:

A.      Recommend parole date rescission or retardation.
B.      Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1.    Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
B.2.    Forfeit up to 14 days of earned FSA Time Credits for each prohibited act committed.
C.      Disciplinary segregation (up to 3 months).
D.      Make monetary restitution.
E.      Monetary fine.
F.      Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G.      Change housing (quarters).
H.      Remove from program and/or group activity.
I.      Loss of job.
J.      Impound inmate's personal property.
K.      Confiscate contraband.
L.      Restrict to quarters.
M.      Extra duty.

28 C.F.R. § 541.3 (Table 1).

The sanctions imposed by the DHO were consistent with the severity level of the

prohibited acts and within the maximum available to the DHO.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly

disproportionate to the severity of the offense." *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir.

2006) (citing *Rummel v. Estelle*, 445 U.S. 263, 271-74 (1980)).  Therefore, only sanctions

12

that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive. *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  The penalties imposed here, loss of good conduct time, disciplinary segregation, and loss of privileges, do not work an "atypical and significant hardship" on Vincent and do not serve to extend his confinement beyond the expected parameters of his sentence.[1]  *Sandin*, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

## III.   Conclusion

Based on the foregoing, the Court will deny the petition for writ of habeas corpus. (Doc. 1).  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: March ___, 2026

---

[1]    Vincent's projected release date is December 14, 2026, via good conduct time.  (Doc. 12-3).

13